**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Carolyn Calhoun, et al.,
Plaintiffs,
v.
Standard Parking Plus Corporation, et al.,
Defendants.

No. CV-24-01771-PHX-MBM

**ORDER**

Before the Court is Plaintiff Carolyn Calhoun's Motion to Exclude the Testimony of Defendants' Billing Expert John Moran (Doc. 52) and Defendant Standard Parking Plus Corp.'s ("SP Plus") Rule 702/*Daubert* Motion to Preclude Certain Opinions of Plaintiff's Expert Joseph Zbick (Doc. 55). Both motions are fully briefed. (Docs. 58-61.) For the following reasons, both motions are denied.[1]

## I. Background

This is a negligence action. On January 24, 2023, Calhoun parked at the CenterPoint Parking Garage in Tempe, Arizona, which is managed by SP Plus. Calhoun was authorized to, and did, park in a space designated for persons with physical disabilities. The concrete wheel stop at the top of the parking space was not centered and extended beyond the edge of the parking space on the passenger side of Calhoun's car. When Calhoun returned to her

[1] The Court denies the parties' requests for oral argument on the motions because the issues are adequately briefed and oral argument will not be useful. *See* LRCiv 7.2(f).

car after work, she first went to get something from the rear passenger door. Calhoun then walked toward the front of her car, tripped over the wheel stop, and fell. (*See* Doc. 66.)

## II. Legal Standard

Under Federal Rule of Evidence 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

A trial court serves a "gatekeeping role," excluding expert opinions if they do not meet the requirements of relevance and reliability under Rule 702. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). A court accomplishes this by making a preliminary determination that an expert's testimony is both relevant and reliable. *Id*. at 589. Rejection of expert testimony, however, remains "the exception rather than the rule." Fed. R. Evid. 702 advisory committee's note (2000 amendments). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence ... [that otherwise] meets the standards of Rule 702." *Daubert*, 509 U.S. at 596.

The Court has latitude in deciding how to determine whether an expert's opinion meets the requirements of Rule 702. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141-42 (1999). When assessing the reliability of expert witness testimony, the court may consider the non-exhaustive factors identified by the Supreme Court in *Daubert*: (1) whether the method "can be (and has been) tested;" (2) whether the method "has been subjected to peer review and publication;" (3) the method's "known or potential rate of error;" (4) whether

there are "standards controlling the technique's operation;" and (5) whether the method has "general acceptance" within the "relevant scientific community." 509 U.S. at 593-94. "[T]he test of reliability is 'flexible,' and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Kumho Tire*, 526 U.S. at 141. Indeed, where the expert's opinions are non-scientific but are based on the knowledge and experience of the expert, the *Daubert* factors of peer review, publication, potential error rates, etc. are not applicable. *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004).

## III. Calhoun's Motion to Exclude Moran's Testimony (Doc. 52)

SP Plus retained Moran to review Calhoun's medical records and bills, as well as a report regarding potential future medical expenses, and opine as to reasonable and customary charges for her medical treatments and services. (Doc. 59-1 at 8-9.) Calhoun moves to exclude Moran's testimony for four reasons.

First, Calhoun argues Moran's "specialized knowledge" will not help the jury because his experience is with insurance companies and other entities paying medical bills, not with medical providers developing billing rates. (Doc. 52 at 3-4; Doc. 61 at 1-3.) Moran has a bachelor's degree in economics, 30 years of experience in medical cost analysis, additional experience in the insurance and health care industries, and testified or provided affidavits regarding medical cost analysis in hundreds of cases. (Doc. 59-1 at 8, 94-95.) Regardless of whether he worked with insurance companies receiving and paying the bills, or medical providers creating and sending the bills, the Court finds that Moran's knowledge, skill, and experience qualify him to offer expert testimony about medical costs under Rule 702(a). *See, e.g.*, *Wichansky v. Zowine*, No. CV-13-01208-PHX-DGC, 2016 WL 6818945, at *3 (D. Ariz. Mar. 22, 2016) (holding witness with 30 years of medical billing experience who had previously been retained in medical billing fraud cases was qualified to offer expert testimony).

Second, Calhoun argues Moran's opinions are not based on sufficient data because he has not confirmed the records in the Fair Health database are representative of billing

rates in the Phoenix area. (Doc. 52 at 4-6; Doc. 61 at 5-10.) Fair Health is widely used and includes billions of records from Medicare and the 60 largest insurance companies. Moran used Fair Health data from all zip codes starting with "852" and compared it against Calhoun's bills. (Doc. 52-3 at 4-7; Doc. 59-1 at 8.) Given the volume of data in the Fair Heath database, the geographic area Moran used for comparison, and his familiarity with Arizona medical providers and bills (*see* Doc. 52-1 at 2), the Court finds that Moran's opinions are based on sufficient data and that he, like other experts, can reasonably rely on the Fair Health database. Fed. R. Evid. 702(b), 703; *see also*, *e.g.*, *MedARC, LLC v. Scott & White Health Plan*, 618 F. Supp. 3d 365, 374 (N.D. Tex. 2022) (holding "anticipated expert testimony is sufficiently reliable" where expert "review[ed] the patients' medical records, and then compar[ed] the amount charged with the FAIR Health rates to determine whether the amounts charged were usual and customary").[2]

Third, Calhoun argues Moran's opinions are not the product of reliable principles or methods because he has not identified an objective or scientific basis for his "80th percentile" benchmarking methodology. (Doc. 52 at 7-9; Doc. 61 at 3-5.) Moran's report and deposition testimony states the 80th percentile method is used by many states (although not Arizona) and organizations such as the American College of Emergency physicians to determine usual and customary rates. (Doc. 52-1 at 2; Doc. 52-2 at 9-11.) Other courts have held such methods are sufficiently reliable to satisfy Fed. R. Evid. 702(c). *See, e.g., McGraw v. Cobra Trucking, Inc.*, 569 F. Supp. 3d 1089, 1101 (D. Colo. 2021) (holding opinions based on 80th percentile method "are sufficiently reliable to avoid preclusion at this juncture" and any "criticisms go to the weight, not admissibility, of [the expert's]

---

[2] Calhoun argues Moran must confirm the data in Fair Health is representative of billing rates in the Phoenix area before he can rely on it. (Doc. 52 at 5-6; Doc. 61 at 5-8.) The cases Calhoun relies on are inapposite and do not support her argument. *See Unknown Party v. Arizona Bd. of Regents*, 641 F. Supp. 3d 702, 717 (D. Ariz. 2022) (in discrimination case, noting "statistical evidence is not rendered irrelevant and inadmissible simply because other, even better statistics are available"); *United States ex rel. Scott v. Arizona Ctr. for Hematology & Oncology, PLC*, No. CV-16-03703-PHX-DGC, 2020 WL 2059926, at *4 (D. Ariz. Apr. 29, 2020) (in false claims case, holding statistical expert's "opinions are sufficiently reliable to be admitted under Rule 702" and can be challenged through cross-examination at trial).

opinions"); *Dean v. Cherokee Ins. Co.*, No. 1:18-CV-04914-WMR, 2021 WL 9315270, at *7 (N.D. Ga. Mar. 22, 2021) ("The Court finds Plaintiff's argument on this issue is without merit, and that any perceived weaknesses regarding Cox's use of the 75th percentile in forming her opinion can be adequately addressed on cross-examination."). This Court agrees that Moran's 80th percentile method is sufficiently reliable and that any critique of Moran's benchmarking methodology goes to the weight, not admissibility, of his testimony.

Finally, Calhoun argues Moran's testimony will not assist the jury because SP Plus has not claimed her medical providers "acted improperly in the manner in which they billed for their services." (Doc. 52 at 9; Doc. 61 at 10.) The Court has consistently held that similar testimony regarding the cost of past and future medical expenses will assist the jury in considering an appropriate damages award. *See*, *e.g.*, *Simington v. Silver Spur MHP LLC*, No. CV-20-01789-PHX-ESW, 2022 WL 16550396, at *4 (D. Ariz. Oct. 31, 2022) ("testimony regarding the average or comparable costs of medical care received by Plaintiff would assist the jury in determining an appropriate award of damages"); *Salazar v. Flores*, No. CV-16-08201-PCT-SPL, 2019 WL 4222384, at *6 (D. Ariz. Sept. 5, 2019) (same); *Contreras v. Brown*, No. CV-17-08217-PHX-JAT, 2019 WL 2080143, at *4 (D. Ariz. May 10, 2019) (same). The Court agrees that Moran's testimony will assist the jury in this case.

## IV. SP Plus's Motion to Limit Zbick's Opinions (Doc. 55)

Calhoun retained Zbick, a Professional Engineer, to inspect the CenterPoint Parking Garage and opine on the condition of the wheel stop. (Doc. 58 at 2.) SP Plus does not seek to preclude Zbick from testifying, only to limit his opinions.[3] (Doc. 55 at 6-8; Doc. 60 at 2-4.)

First, SP Plus argues Zbick should not be allowed to testify that the tripping hazard associated with wheel stops is "sufficiently mitigated" when they are properly placed and the wheel stop at issue "present[ed] a hazard to pedestrians in the area" because it was not

[3] Although it challenges certain of Zbick's opinions, SP Plus concedes – and the Court agrees – that Zbick's testimony about the wheel stop is relevant and that he is generally qualified to offer expert testimony based on his knowledge, skill, experience, training, and/or education, as required by Rule 702. (Doc. 60 at 2.)

in the proper position. (Doc. 55 at 6-7.) SP Plus contends these opinions are not based on sufficient facts or data or the product of reliable principles and methods as required by Rule 702(b)-(c). (*Id*. at 6-7.) The displacement of the wheel stop is undisputed, however, as shown by photos in both parties' expert reports. (Doc. 55-1 at 3-4, 7-8; Doc. 58-3 at 5-6.) Zbick's opinions about the tripping hazard posed by wheel stops and how it can be mitigated are reasonable conclusions to draw from American Society for Testing and Materials (ASTM) Standard F1637-13, an industry standard whose reliability SP Plus does not challenge. (Doc. 55-1 at 9, 52.) The challenged opinions therefore satisfy Rule 702(b)-(c).

SP Plus also argues Zbick's opinion that the tripping hazard posed by wheel stops can be mitigated by proper placement is inconsistent with his opinion that wheel stops always pose a tripping hazard. (Doc. 60 at 2-3.) SP Plus contends that Zbick can offer the latter opinion but the former must be excluded. (*Id*.) The Court disagrees. It is not inconsistent to opine that something is inherently risky and also that the risk can be mitigated. *See Thompson v. Walmart Inc*., No. 21-15449, 2022 WL 2800817, at *1 (9th Cir. July 18, 2022) (reversing summary judgment for defendant; noting plaintiff's "expert witness offered unrebutted testimony that wheel stops are foreseeable hazards and that reasonable measures can be taken to reduce the risk of tripping over them"). Zbick's opinions are not so inconsistent as to be unreliable and SP Plus can explore any perceived conflict between Zbick's opinions through cross-examination at trial.

Second, SP Plus argues Zbick should be precluded from testifying that "the position of the wheel stop was in an unexpected location and therefore less likely to be perceived and successfully navigated." (Doc. 55 at 7-8.) SP Plus contends that Zbick's opinion is barred by Rule 702(d) because he did not ask Calhoun where her attention was focused and that his opinion is irrelevant because Calhoun testified she did not see the wheel stop. (Doc. 55 at 7-8; Doc. 60 at 3-4.) Again, the Court disagrees. Zbick's opinion that the wheel stop was less likely to be perceived and successfully navigated is a reasonable application of the peer-reviewed literature cited in his reports to the facts of the case. (Doc. 55-1 at 13,

46-47.) The reliability of Zbick's opinion does not turn on knowing where Calhoun's attention was focused or her testimony that she did not see the wheel stop. As Zbick explained, Calhoun may have seen the wheel stop in her field of vision but may not recall seeing it because she did not interpret or perceive it. (Doc. 58-2 at 12-13.) Zbick's testimony, and the testimony of SP Plus's expert in this area, Dr. James J. Todd (Doc. 58-3), will help the jury attribute fault between Calhoun and SP Plus.

**IT IS ORDERED** that Calhoun's Motion to Exclude the Testimony of Defendants' Billing Expert John Moran (Doc. 52) is **DENIED**.

**IT IS FURTHER ORDERED** that SP Plus's Rule 702/*Daubert* Motion to Preclude Certain Opinions of Plaintiff's Expert Joseph Zbick (Doc. 55) is **DENIED**.

Dated this 30th of September, 2026.

Mary Bridget Minder

Honorable M. Bridget Minder
United States Magistrate Judge